IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MICHAEL LEWIS SCOTT,           )
    Plaintiff,                 )
                      )
        v.                      )     CIVIL NO.  3:12cv176
                      )
WATSONTOWN TRUCKING CO.        )
INC., *et al.*,                )
    Defendants.                )
_____)

## MEMORANDUM OPINION

On November 9, 2012, a jury found that Defendants Watsontown Trucking Co., Inc., and William Miller were not negligent when their truck that Defendant Miller was driving collided with Plaintiff Michael Lewis Scott, who was riding on a motorcycle, at the intersection of Broad Street and Parham Road in Richmond, Virginia.[1] Pursuant to Federal Rule of Civil Procedure 59, Plaintiff seeks to have the jury's verdict set aside and a new trial granted by arguing that the Court erred by giving a missing witness jury instruction after Plaintiff failed to testify after his counsel had repeatedly identified him as a witness on Plaintiff's witness list, after his counsel placed in controversy before the jury Plaintiff's failure to attend the trial, and after Plaintiff's counsel submitted and sought an *identical instruction* in anticipation of Defendant Miller failing to testify. In support of his claim, Plaintiff asserts that no basis existed for giving the missing witness instruction and, even if a proper basis did exist, the instruction was not properly limited to reference only Plaintiff, which led to improper argument by defense counsel. For the reasons that follow, the Court DENIES Plaintiff's Rule 59 Motion for New Trial (ECF No. 107).

---

[1]    The Court presided over the trial of this case based on the consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

# I.   Factual Background

The facts of this traffic accident are relatively simple and boil down to whether Defendant Miller had a green light when he turned left from Broad Street onto Parham Road and, if not, whether Plaintiff acted with contributory negligence or assumed the risk when his motorcycle struck the truck that Defendant Miller was driving. Plaintiff called four witnesses who testified either that they saw the light that Defendant Miller faced and that it was red (John Oulton, Trial Transcript "Tr." at 118-19; Tracy Thompson, Tr. at 147-48) or that the light facing Plaintiff was green when Plaintiff entered the intersection (David Ruesch, Tr. at 136; Robert Elam, Tr. at 156.) Defendant Miller testified that he made the left turn onto Parham Road after the light that he faced turned green and that the intersection was clear before he made the turn. (Tr. at 447-48.)

Defendants made two additional points that related to their defenses of contributory negligence and assumption of the risk. First, Plaintiff had only recently purchased the motorcycle and had stalled the motorcycle in the middle of Broad Street only blocks before the accident. (Tr. at 133, 140, 155, 343.) And relatedly, Plaintiff struggled stopping the motorcycle before the crash and had "laid down" the motorcycle, sliding into the truck. (Tr. at 137, 148-49, 157, 464.) Second, other vehicles traveling in lanes adjacent to Plaintiff and driving in the same direction as Plaintiff were able to stop their vehicles and avoid hitting Defendants' truck. (Tr. at 136-40, 448.)

Therefore, the jury was called upon to answer whether Defendant Miller negligently entered the intersection in the face of a red light and, if so, whether Plaintiff's negligence contributed to the accident or whether Plaintiff assumed the risk by entering the intersection while Defendant Miller was turning. Plaintiff's testimony could have materially aided in the

2

resolution of these issues by addressing: (1) his experience, training and ability to drive the motorcycle; (2) whether he faced a green light when he entered the intersection; (3) whether he saw Defendants' truck before Plaintiff entered the intersection; and (4) the efforts that Plaintiff undertook once he did see Defendants' truck. Thus, there can be no question that Plaintiff's missing testimony was material as to the issue of liability.

Further, had the jury ruled for Plaintiff as to liability, Plaintiff's testimony about the continuing pain and limitations resulting from his injuries could have had significant impact on the damages that he would have received, because the continuing extent of Plaintiff's injuries was very much in dispute. Plaintiff called his father, girlfriend and a treating physician, who described Plaintiff's life as one filled with pain and medications after the accident. (Tr. at 221-22, 243, 281-89, 333-39, 341-42.) In response, Defendants called an expert physician, who testified that Plaintiff's surgeries had essentially healed his injuries, leaving him with little lasting effects from the accident. (Tr. at 470-71.) Consequently, Plaintiff's testimony would have been material to the issue of damages as well had the jury ruled in his favor as to liability.

## II.     Relevant Procedural History

Before trial, on October 5, 2012, Plaintiff filed Plaintiff's List of Proposed Witnesses (ECF No. 52), listing himself as the first witness. Pursuant to the Court's Scheduling Order, the parties filed the Joint Final Pretrial Order (ECF No. 96) on October 31, 2012 — only a week before trial — and identified their proposed witnesses. Plaintiff again listed himself as the first witness. (Joint Final Pretrial Order at 3.) Throughout the trial, Plaintiff's counsel led the Court to believe that Plaintiff would testify. Indeed, during the Final Pretrial Conference, which occurred the day before trial began, the Court asked Plaintiff's counsel if Plaintiff would be the first witness to testify. Plaintiff's counsel responded: "Actually, the eyewitness, Mr. Oulton, the

3

one eyewitness we just discussed, is going on a cruise the following day so I have to get him on tomorrow." (Final Pretrial Conference Transcript "FPTC" (ECF No. 115) at 15.) Plaintiff's counsel did not state that Plaintiff would not testify. Notably, during that same hearing, Plaintiff's counsel directly told the Court that another witness (Suzanne Southworth) would not be testifying. (FPTC at 9.)

Near the end of the trial, the Court realized that Plaintiff may not testify and had the following exchange with Plaintiff's counsel:

> The Court: Mr. Garza, am I now believing that the Plaintiff is now not going to testify?
>
> Mr. Garza: I don't think so, Your Honor.
>
> The Court: All right. I think I might have let some hearsay in before believing that he was going to testify. I thought that's what you indicated earlier in the case.

(Tr. at 292.) Not only did Plaintiff not testify, he never appeared at the trial.

During the trial, Plaintiff's counsel elicited testimony from one of Plaintiff's treating physicians, Dr. Steven Macedo, regarding Plaintiff's ability to appear in court. (Tr. at 245-46.) Dr. Macedo testified that he advised Plaintiff against appearing for the following reasons:

> Two issues. One is this is going to be a lot more than four hours of sitting here. It is going to be about eight hours a day easily, and that's five days a week, not what he's doing at school, which is four hours of class three days a week. So he's going to poop out. He's going to — if he sat here, his pain would spike. He would have to take a lot of extra medication and be very intoxicated. He would be very, very uncomfortable for all of that time.
>
> The second reason is, you know, the medical testimony is saying some fairly depressing things, which would be very upsetting to him to hear in a sense. So it would be hard for him to hear, you know, me making statements about the fact that he's maximized; he's plateaued; there is no further improvement. I'd like not to have him exposed to that from an emotional standpoint, but physically was the major issue.

(Tr. at 246.) Yet, during cross-examination, Dr. Macedo acknowledged that Plaintiff had been successfully deposed (Tr. at 247-48), walks his dog for two hours per night (Tr. at 253), attends Marymount University and regularly works out at a gym (Tr. at 253), and had attended multiple work conditioning programs and functional capacity evaluations, some lasting approximately two hours long (Tr. at 257-59). While Plaintiff's counsel solicited this testimony about Plaintiff's ability to sit through the entire trial, at no time did Plaintiff offer evidence about his ability to appear for a short time and testify, nor did Plaintiff's counsel ask the Court to make any special arrangements (*e.g.*, taking breaks, etc.) to secure Plaintiff's testimony in a comfortable manner. Instead, Plaintiff simply elected not to testify, while, in contrast, Defendant Miller did testify.

Importantly, before trial Plaintiff tendered his proposed jury instructions that included Virginia Model Jury Instruction Civil No. 2.080 (unexplained failure to produce important witness), which was *identical* to the missing witness instruction that the Court ultimately gave. *Compare* Joint Requested Jury Instructions (ECF No. 79) at 3, *with* Tr. at 532. Plaintiff offered this proposed jury instruction, believing that Defendant Miller would not testify. Indeed, during the Final Pretrial Conference, Plaintiff's counsel argued in favor of the instruction, but the Court denied the request. (FPTC at 33.)[2]

After Plaintiff rested his case and after the close of the second day of trial, Defendant petitioned the Court to deliver the missing witness instruction as applied to Plaintiff in light of his failure to testify. (Tr. at 422-23.) Initially, the Court noted that the instruction did not apply, because Plaintiff was available to both parties. (Tr. at 423.) The Court then asked Plaintiff's counsel if he would accept service of a defense subpoena for Plaintiff to appear the next day.

---

[2]  Defendant Miller ultimately testified, rendering moot the issue of the application of the requested instruction to his lack of testimony. (Tr. at 447-55.)

Plaintiff's counsel responded that he did not have authority to accept service on his client's behalf. (Tr. at 423.) Plaintiff's counsel also indicated that a request for a subpoena at that time was untimely, because the "federal rule requires five or seven days notice for a subpoena in any event . . . ." (Tr. at 423.)[3] At that time, the Court denied Defendants' request for the jury instruction, but noted that a charge conference would be held the next day at the conclusion of the evidence. (Tr. at 424.)

Later than evening, the Court conducted further research on the issue and determined that the missing witness instruction was appropriate. The Court e-mailed a draft set of jury instructions to the parties that evening and notified counsel that the Court had revisited its earlier decision denying Defendants' request for the missing witness instruction and intended to give the instruction. During the charge conference on the following day, Plaintiff objected to the instruction, saying that Plaintiff's deposition was "filled with I don't know and I don't remember." (Tr. at 481.) At no time did Plaintiff offer his deposition as evidence or provide it to the Court, so the contents of the deposition were never made a part of the record. (Tr. at 481.) Indeed, the Court only learned of the contents of the deposition when Plaintiff cited extensively to selected passages from his deposition in his Memorandum of Points and Authorities in Support of His Rule 59 Motion for New Trial (ECF No. 108) (hereafter "Pl. Mem."). On January 22, 2013, as a result of Plaintiff's Memorandum, the Court ordered Plaintiff to file a complete copy of the transcript of Plaintiff's deposition. (ECF No. 112.) Plaintiff complied with the Court's Order and filed a transcript of Plaintiff's deposition (ECF No. 113), which will now be made a part of the record for this case.

---

[3]     Local Rule 45(E) mandates: "Except as otherwise ordered by the Court for good cause shown, subpoenas for attendance of witnesses at hearings or trials in civil actions shall be served not later than fourteen (14) days before the date of the hearing or trial."

After considering Plaintiff's arguments during the charge conference, the Court reiterated its decision to issue the instruction, citing to evidence offered about Plaintiff's recollection of the accident and Plaintiff's counsel's decision to place Plaintiff's physical ability to attend the trial in controversy before the jury. (Tr. at 481-82.) The Court concluded:

> I believe that this is a factual issue for the jury. You are free to argue based upon the facts presented, and, I mean, only the facts presented in this room, not — we're not going beyond that, as to why that should not be considered. And [defense counsel] is — certainly should feel free to argue in the alternative, if that's what you-all want to do. It is your argument. But you [have] placed this issue before the jury in terms of the evidence that you both put forward. The jury now needs to hear the instruction.

(Tr. at 482.) Plaintiff's counsel then asked that the instruction not be applied to Plaintiff's mother, who was present during the trial but did not testify. Defendants agreed not to pursue any argument about this instruction as applied to Plaintiff's mother — an agreement that Defendants' counsel fulfilled. (Tr. at 483-84.) Plaintiff's counsel raised no further objections to the instruction, nor did they seek any limitation on the instruction other than that agreed upon as to Plaintiff's mother. (Tr. at 484.)

During closing argument, defense counsel cited the missing witness instruction and pointed out to the jury that Plaintiff did not testify despite his having been deposed, having undergone numerous evaluations and having attended school. (Tr. at 517-19.) Plaintiff's counsel responded that: "Mr. Scott didn't come to court, and they want to make a big deal about that one, too. They wanted to bring him in here and make him sit here and then make him watch all of this stuff. They wanted to make him suffer." (Tr. at 523.) The Court sustained Defendants' objection to this response. (Tr. at 523.)

The Court then gave the following missing witness instruction while instructing the jury:

> Let's talk . . . about the unexplained failure to produce an important witness. If you believe that a party, without explanation, failed to call an available witness who has knowledge of necessary and material facts, you may presume that witness' testimony would have been unfavorable to the party who failed to call the witness.

(Tr. at 532.) This instruction tracked the exact language set forth in Virginia Model Jury Instruction Civil No. 2.080 (unexplained failure to produce important witness), which Plaintiff submitted in his proposed jury instructions. *See* Joint Requested Jury Instructions (ECF No. 79) at 3. After deliberations, the jury returned a verdict in favor of Defendants, finding that Defendants had not been negligent. (Tr. at 551.) Because the jury found no negligence, they did not need to address whether Plaintiff had been contributorily negligent or had assumed the risk.

## III.    Standard of Review

Federal Rule of Civil Procedure 59(a) provides that "[t]he court may, on motion, grant a new trial. . . after a jury trial for any reason for which a new trial has heretofore been granted in an action at law in federal court." A new trial is granted pursuant to Rule 59(a) if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (quoting *Atlas Food Systems & Services, Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). The decision to grant or deny a Rule 59(a) motion for a new trial rests "in the sound discretion of the trial judge." *Wadsworth v. Clindon*, 846 F. 2d 265, 266 (4th Cir. 1988).

Moreover, a trial court has broad discretion in framing its jury instructions and will not be reversed "provided that the instructions, taken as a whole, adequately state the controlling law." *Teague v. Baker*, 35 F.3d 978, 985 (4th Cir. 1994). Indeed, "[a] judgment will be reversed for

8

error in jury instructions only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Abraham v. County of Greenville, South Carolina*, 237 F.3d 386, 393 (4th Cir. 2001) (quoting *Wellington v. Daniels*, 717 F.2d 932, 938 (4th Cir. 1983)). And "to preserve an objection to the instructions to the jury, a party is required to point out specifically the nature of the objection." *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 112 (4th Cir. 1991); Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction or failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."). A failure to raise a specific objection will result in a waiver of the challenge to the instruction. *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 153 n. 6 (4th Cir. 2012).

<h2 style="text-align:center">IV.   Discussion</h2>

Plaintiff raises two challenges to the verdict. First, he argues that the Court erred by giving the missing witness instruction. Second, Plaintiff asserts that, even if the instruction was properly given, the instruction was not limited to reference only Plaintiff, which led to improper argument by defense counsel. For the reasons that follow, the Court finds that Plaintiff's arguments lack merit.

Before addressing the merits of the missing witness instruction, we must first discuss Plaintiff's submission of his requested jury instructions that included Virginia Model Jury Instruction Civil No. 2.080 (unexplained failure to produce important witness), which was *identical* to the missing witness instruction that the Court ultimately gave. *Compare* Joint Requested Jury Instructions (ECF No. 79) at 3, *with* Tr. at 532. In a similar situation in *Doe v. Johnson*, 52 F.3d 1448 (7th Cir. 1995), the Seventh Circuit held:

We begin by calling attention to the fact that *the plaintiff's attorney proposed the missing witness instruction during the jury instruction conference.* The only difference between the plaintiff's and the defendants' instruction is that the defendants also wanted the instruction to apply to missing evidence as well as missing witnesses. This court has enunciated the clear principle that in a civil case a litigant may not attack an instruction of which he was the proponent.

*Id.* at 1460 (emphasis in original; footnote, internal quotation marks and citations omitted). The

court further ruled in words that resonate here that:

[Plaintiff's counsel] stated she proposed the missing witness instruction in case the defense failed to call any rebuttal witnesses she deemed necessary, yet when the defense turned her own proposed instruction on her, she sought to have the verdict overturned. An objection of this nature is without merit, to say the least, and we hold that [plaintiff] cannot raise the propriety of the missing witness instruction when her counsel proposed the very same instruction.

*Id.* Thus, for this reason alone, Plaintiff's challenge to the missing witness instruction — the

very same instruction that he proposed — must fail.

The Court also believes that it is important to point out that the gamesmanship here was

not limited only to Plaintiff seeking the instruction, then objecting to the same instruction when

Defendants sought it. As detailed above, Plaintiff's counsel led the Court to believe that Plaintiff

was going to testify and, importantly, gained a litigation advantage from that misdirection. (Tr.

at 292.) And after Plaintiff's counsel finally made clear that Plaintiff would not testify and

defense counsel requested the missing witness instruction, the Court sought to cure the situation

by inquiring whether Plaintiff's counsel would accept service of a defense subpoena for

Plaintiff's testimony the next day, which Plaintiff's counsel rejected. (Tr. at 423.) Plaintiff's

counsel also indicated that a request for a subpoena at that time was untimely, which was

accurate. (Tr. at 423.) Consequently, Plaintiff's challenge to the missing witness instruction

must also be viewed within the context of his counsel's gamesmanship. *See Dent v. Siegelbaum*,

2012 WL 718835, at *3 (D. Md. Mar. 5, 2012) (noting that "an 'aura of gamesmanship'

frequently accompanies requests for missing witness instructions and as a result district court judges are afforded considerable discretion in deciding when to give the instruction.") (citing *United States v. Mittelstaedt*, 31 F.3d 1208, 1215 (2d Cir. 1994)).

A. The Court properly issued the missing witness jury instruction.

The missing witness instruction traces its origins to the Supreme Court's decision in *Mammoth Oil Co. v. United States*, 275 U.S. 13 (1927), in which the Court held that, based on the failure of a key witness to testify, "it just may be inferred that [the witness] was not in position to combat or explain away any fact or circumstance so supported by evidence and material to the government's case." *Id.* at 52. As the First Circuit recently described,

> [a missing witness instruction] informs the jury that a party's failure to produce a particular witness may justify the inference that the witness' testimony would have been unfavorable to that party. The instruction, however, should only be given where the witness is either actually unavailable to the party seeking the instruction or so obviously partial to the other side that the witness though technically available is deemed to be legally unavailable. When deciding whether to issue a missing witness instruction the court must consider the explanation (if any) for the witness's absence and whether the witness, if called, would be likely to provide relevant, non-cumulative testimony.

*Latin American Music Company v. American Society of Composers Authors and Publishers*, 593 F.3d 95, 101-02 (1st Cir. 2010) (internal quotation marks, brackets and citations omitted). As the court in *Poland v. Potomac Family Practice*, 51 Va. Cir. 414, 2000 WL 516308 (Va. Cir. Ct. 2000), explained: "the rationale of the rule is generally accepted — that the adverse inference is justified in circumstances where it [] appears that the witness' testimony would have been produced but for the party's apprehension about what it would reveal." *Id.*, at *2 (quoting Alan Stephens, Annotation, *Adverse Presumption or Inference Based on Party's Failure to Produce or Examine Witness with Employment Relationship to Party*, 80 A.L.R. 4th 405, 415 (1990)).

"The determination of whether a missing witness instruction should be given rests within the trial court's sound discretion." *Cameo Convalescent Center, Inc., v. Senn*, 738 F.2d 836, 844 (7th Cir. 1984). "A trial court may use its discretion to give a missing witness charge when 'a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction' yet the party fails to call those witnesses." *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 275 (2d Cir. 1996) (quoting *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988)). "The charge allows the jury to draw an adverse inference that the testimony of the witnesses would have been unfavorable to the party." *Sagendorf-Teal*, 100 F.3d at 275. To warrant a missing witness instruction, a party seeking the instruction first "must establish the potential witness' unavailability in a physical or practical sense; and second, the potential testimony must be relevant and noncumulative." *Jones v. Otis Elevator Company*, 861 F.2d 655, 659 (11th Cir. 1988). "A witness' availability is not determined solely from his physical presence at the trial or his accessibility to subpoena. Rather, availability also will turn on the witness's relationship to the nonproducing party. A witness is unavailable in a practical sense when this relationship is such that it creates bias or hostility against the opposing party." *Id.*

Virginia has adopted this test for issuance of a missing witness instruction, indicating that such an instruction "is a statement of the settled rule that the unexplained failure of a party to call an available material witness gives rise to an inference, sometimes called a presumption, that the testimony of such absent witness would be adverse to such party." *Neeley v. Johnson*, 215 Va. 565, 573, 211 S.E.2d 100, 107 (1975).[4] "The essential elements of the rule, which must be

---

[4]     Because this case is before the Court based on diversity jurisdiction, the law of the forum state (here, Virginia) applies. *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 782 (4th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

supported by the evidence to justify an instruction thereon, are availability and materiality of the witness." *Id.*; *see also Harper v. B & W Bandag Center, Inc.*, 226 Va. 469, 471, 311 S.E.2d 104, 105 (1984) ("[M]issing witness instruction should be granted where the party requesting the instruction establishes a prima facie case that the absent witness is available and that his or her testimony would be material."). Thus, we turn now to whether Plaintiff was available to testify and, if so, whether his putative testimony would have been material to the issues litigated at trial.

1. Availability

Plaintiff raises several arguments indicating that Plaintiff failed to meet the availability requirement to be deemed a missing witness. Specifically, Plaintiff challenges his availability to testify and further argues that Plaintiff was equally available to each party. (Pl. Mem. at 5.) These arguments lack merit.

As the Virginia Supreme Court made clear in *Neely*:

> Availability may be translated as the power of the party to produce. Probable availability rather than actual availability may be sufficient depending upon the state of the evidence in each case. The lack of power or nonavailability may be due to the person's absence from the jurisdiction, his illness, the party's ignorance of the whereabouts of the witness, the person's testimony being inadmissible, or other like circumstances. "Available" is equated to "control" in some cases, that is, the witness is available if he is in such relationship with the party that it is likely that his presence could be procured. Nonavailability may be explained and the inference, or presumption, rebutted when the litigant explains the absence.

*Neely*, 215 Va. at 573-74; 211 S.E.2d at 107 (internal citations and quotation marks omitted).

Here, there can be no question that Plaintiff had unmatched ability to produce the testimony, since he was the witness. "The non-appearance of a litigant at trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention." *Gray v. Great American Recreation Association, Inc.*, 970 F.2d

13

1081, 1082 (2d Cir. 1992) (quoting *United States v. Fields*, 102 F.2d 535, 537-38 (8th Cir. 1939)); *see also United States v. Roberson*, 233 F.2d 517, 519 (5th Cir. 1956) ("failure of a defendant in a civil case to testify or offer other evidence within his ability to produce and which would explain or rebut a case made by the other side, may, in a proper case, be considered as a circumstance against him and may raise a presumption that the evidence would not be favorable to his position."); *Banks v. Harris*, 238 Va. 81, 83, 380 S.E.2d 634, 635 (1989) (finding that an adverse inference applies "when a party to litigation is in possession of vitally material facts and fails to testify to them") (quoting *Piccolo v. Woodford*, 184 Va. 432, 439, 35 S.E.2d 393, 395 (1945)).[5] Consequently, this is not a situation where the non-testifying witness was equally available to both sides. *See Dunlap v. G. & C. Towing*, 613 F.2d 493, 497 (4th Cir. 1980) (finding missing witness instruction not appropriate when plaintiff's treating physician available to both sides).

Plaintiff advances two arguments to challenge Plaintiff's availability as a witness. First, Plaintiff asserts that "there was no conflict as to Scott's availability, much less a sharp conflict." (Pl. Mem. at 4.) According to Plaintiff, "Dr. Macedo testified that he advised against having Scott at the trial for medical and psychological reasons, which was uncontroverted by the defense." (Pl. Mem. at 4.) This statement is simply not accurate. On cross-examination, defense counsel challenged Dr. Macedo's assertions, pointing out that Plaintiff had been

---

[5]     Indeed, courts have upheld the issuance of a missing instruction even when the witness was not a party, but had an employer-employee relationship with a party. *See, e.g., Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 432 (2d Cir. 1999) (finding that nontestifying priest within control of diocese, since he was still a member of and had contact with diocese); *Grajales-Romero v. American Airlines, Inc.*, 194 F.3d 288, 298 (1st Cir. 1999) (giving missing witness instruction where employee of defendant failed to appear to testify without acceptable justification); *Jones v. Otis Elevator Company*, 861 F.2d 655, 659-60 (11th Cir. 1988) ("Because of an employee's economic interests, the employer-employee relationship is recognized as one creating practical unavailability.").

successfully deposed (Tr. at 247-48), walks his dog for two hours per night (Tr. at 253), attends

Marymount University and regularly works out at a gym (Tr. at 253), and had attended multiple

work conditioning programs and functional capacity evaluations, some lasting approximately

two hours long (Tr. at 257-59).

Plaintiff also ignores the very significant fact that Dr. Macedo's testimony only addressed

Plaintiff's ability to endure sitting through the entire trial and the impact of other witnesses on

Plaintiff's psyche. (Tr. at 246.) At no time did Plaintiff offer *any* evidence that he could not

attend the trial for a short time period (as he repeatedly has done for schooling, evaluations and

his deposition) to testify, nor did Plaintiff's counsel request any special measures that would

have allowed Plaintiff to testify, such as asking the Court for recesses if needed by Plaintiff. In

short, the record in this case offers no explanation as to why Plaintiff elected not to testify.

Moreover, Plaintiff's counsel placed this issue in controversy before the jury. (Tr. at

246.) Having done so, the jury had the responsibility to make a factual determination as to

whether Plaintiff was truly unable to attend the trial and the instruction provided appropriate

guidance for the jury to reach its conclusion. *See Neely*, 215 Va. at 574, 211 S.E.2d at 107

("Nonavailability may be explained and the inference, or presumption, rebutted when the litigant

explains the absence."). And, importantly, the instruction left the jury with the discretion to find

both whether Plaintiff was truly unavailable to testify and, if not, then whether an adverse

inference should be drawn. (Tr. at 532.) ("*If you believe* that a party, without explanation, failed

to call an available witness who has knowledge of necessary and material facts, *you may*

*presume* that witness' testimony would have been unfavorable to the party who failed to call the

witness.") (emphasis added). In other words, the instruction did not mandate that the jury find

that Plaintiff was available to testify, nor did it require the jury to draw a negative inference from

15

his failure to do so.

Plaintiff's second point focuses on Defendants' ability to subpoena Plaintiff: "The defense listed Scott as its witness but did not subpoena him, even when offered a last-minute opportunity to do so by the Court." (Pl. Mem. at 4.) In raising this point, however, Plaintiff ignores the gamesmanship of his counsel. As previously detailed, before trial Plaintiff led the Court and the defense to believe that Plaintiff would testify. When it became clear that Plaintiff was not going to testify, the Court then asked Plaintiff's counsel if he would accept service of a defense subpoena for Plaintiff to appear the next day. Plaintiff's counsel responded that he did not have authority to accept service on his client's behalf. (Tr. at 423.) Plaintiff's counsel also indicated that a request for a subpoena at that time was untimely, because the "federal rule requires five or seven days notice for a subpoena in any event . . . ." (Tr. at 423.) Although Plaintiff's counsel incorrectly recited the time period for the service of subpoenas, he was correct in asserting that the time period that would allow Defendants to subpoena Plaintiff had passed. E.D.Va. Local Rule 45(E) ("Except as otherwise ordered by the Court for good cause shown, subpoenas for attendance of witnesses at hearings or trials in civil actions shall be served not later than fourteen (14) days before the date of the hearing or trial."). Thus, by the time that Plaintiff's true intention of not testifying was revealed, it was too late for Defendants to subpoena Plaintiff.[6]

The record demonstrates that, as a party to this lawsuit — indeed, the party that initiated this lawsuit, Plaintiff simply elected not to testify. The record contains no evidence that

---

[6] Plaintiff's gamesmanship renders the Fourth Circuit's decision in *Brice v. Nkaru*, 220 F.3d 233, 240 (4th Cir. 2000), inapplicable here. In *Brice*, the court rejected plaintiff's request for an adverse inference based on defendant's refusal to testify. In doing so, the court found that the plaintiff could have called the defendant as a witness and that the record lacked proof as to the materiality of the defendant's putative testimony. *Id.*

establishes that his medical condition prevented his testimony. As such, the first prong to support the missing witness instruction — Plaintiff's availability — was established.

## 2. Materiality

We next turn to the second prong needed for the instruction: the materiality of Plaintiff's testimony. Because the materiality of Plaintiff's putative testimony was previously detailed, *see supra* at 2-3, we address only Plaintiff's contention that his lack of memory of the events undermined the materiality of his testimony. (Pl. Mem. at 5-6.)

Plaintiff relies upon *Banks v. Harris*, 238 Va. 81, 380 S.E.2d 634 (1989), in support of his argument. (Pl. Mem. at 5.) In *Banks*, after noting the propriety of an adverse inference from a party's failure to testify, the court held that "[a]n unfavorable inference may not be drawn, however, when the evidence shows that the party has no personal knowledge of the facts in issue or when facts within the party's knowledge have been established by other evidence." *Id.* at 83, 380 S.E.2d at 635. The facts of that case involved a bicyclist, who failed to testify in his negligence action, because he had no memory of the events at issue in the case. *Id.* at 84, 380 S.E.2d at 636. Indeed, other witnesses corroborated his complete lack of memory and the court found that "undisputed evidence established that because of his injury [the bicyclist] had no memory of the accident. . . [and] therefore, had no knowledge of any facts necessary and material to the issue of how the accident occurred." *Id.* at 83, 380 S.E.2d at 635. Consequently, the court found that the trial court erred by giving a missing witness instruction as to the plaintiff's failure to testify. *Id.* at 84, 380 S.E.2d at 636.

However, *Banks* has no application here, because the record demonstrates that Plaintiff has significant recall about the accident. Indeed, the Court made clear during the jury conference that "[i]f there was evidence in front of this jury that [Plaintiff] did not have recollection of the

17

events, [the Court] would not have given the instruction." (Tr. at 481.) Although Plaintiff's

counsel objected to the missing witness instruction and stated that Plaintiff's deposition was full

of "I don't know and I don't remember" (Tr. at 481), the only evidence in the record at the time

of the jury charge conference indicated that Plaintiff did have recollection of the accident. For

example, Plaintiff's girlfriend testified that immediately after the accident Plaintiff sent her a

text, indicating that he had been in an accident and had suffered injuries to his legs. (Tr. at 333.)

Dr. Roger Gisolfi, a defense expert, testified that Plaintiff stated that he had partial recollection

of the events leading up to the accident, including "losing control of his motorcycle and laying it

down . . . ." (Tr. at 464.) Aside from the bald assertions of Plaintiff's counsel (which do not

constitute evidence), Plaintiff offered no evidence that established he lacked any memory of the

events at issue in this case.

  In his Memorandum of Points and Authorities in Support of His Rule 59 Motion for New

Trial, Plaintiff cites extensively to his deposition, which was never offered into evidence or

otherwise made part of the record during or before the jury charge conference. After receiving

Plaintiff's Memorandum, the Court ordered Plaintiff to file a complete copy of the transcript of

Plaintiff's deposition, which Plaintiff did. A review of the complete transcript of Plaintiff's

deposition not only demonstrates that Plaintiff recalled a significant amount of the events that led

to the accident, but also that Plaintiff could have supplied testimony material to the issues in

controversy before the jury.

  During the deposition, Plaintiff detailed his training and experience with the motorcycle.

(Plaintiff's Deposition "Pl. Dep." (ECF No. 113) at 51-54, 88-89). He also described his actions

before the accident, including stopping at Starbucks shortly before the accident because it had

begun to rain. (Pl. Dep. at 55-58.) Plaintiff also recalled that the road was slick from the rain.

18

(Pl. Dep. at 60.) Plaintiff acknowledged that he stalled the motorcycle a few blocks before the accident. (Pl. Dep. at 57, 87-89.) Plaintiff remembered being able to restart the motorcycle and traveling until he saw the truck move into his lane of traffic. (Pl. Dep. at 58.) Plaintiff said that he tried to brake, stopped and then next knew that the EMTs were treating him. (Pl. Dep. at 58.)

Plaintiff further testified during the deposition that the light facing him was green when he entered the intersection and that he was already moving into the intersection when he applied his brakes. (Pl. Dep. at 60, 64.) Plaintiff indicated that he was familiar with this intersection. (Pl. Dep. at 61.) He also said that no vehicles blocked his view of the intersection. (Pl. Dep. at 66.)

Plaintiff described the truck as a "semi-truck" and very large. (Pl. Dep. at 68.) Plaintiff conceded that he saw the truck before it crossed into Plaintiff's path and that the truck was moving when Plaintiff saw it. (Pl. Dep. at 67.) Indeed, Plaintiff acknowledged that when he first saw the truck, the truck had already begun its turn into the intersection. (Pl. Dep. at 68). Specifically, Plaintiff said that, as he approached the intersection, he saw the truck moving from Plaintiff's left towards his right and that the truck was not completely in front of Plaintiff when he first saw the truck. (Pl. Dep. at 90.) Plaintiff also admitted that he did not stop at the intersection before he struck the truck and that his intention as he approached the intersection was to continue to go through it. (Pl. Dep. at 69.) Plaintiff also said that he was not moving very fast as he approached the intersection, because the roads were wet. (Pl. Dep. at 69.) After he saw the truck, Plaintiff slammed on the brakes and somewhat lost control of the motorcycle, causing the bike to "wobble" or "jerk[] back and forth." (Pl. Dep. at 70.)

Plaintiff further admitted that he was unsure whether he lost consciousness during the accident. (Pl. Dep. at 73.) Plaintiff was able to recall speaking with the EMTs as he lay in the

road. (Pl. Dep. at 74.) Plaintiff knew that his legs were injured when he spoke with the EMTs. (Pl. Dep. at 76.) Plaintiff also provided extensive testimony about his injuries, the treatment that he received and the continuing impact of the injuries — all of which was relevant to damages had the jury ruled in his favor as to liability. (Pl. Dep. at 28-50, 78-87.)

Thus, unlike *Banks*, Plaintiff could provide extensive testimony about the accident, much of which he alone could supply. For example, only Plaintiff could describe when he first saw the truck, the position of the truck when he first saw it and his efforts to avoid the collision. And these facts were extremely relevant to the issues of contributory negligence and assumption of the risk. Thus, there can be no question that Plaintiff could have provided testimony that was material to the issues before the jury.

Finally, it bears pointing out that Plaintiff's testimony was inconsistent with some of the evidence that he offered. For example, Plaintiff testified that he did not stop at the intersection and intended to keep moving through the intersection when the accident occurred. (Pl. Dep. at 68-69.) Yet, two of Plaintiff's eyewitnesses (David Ruesch and Robert Elam) testified that Plaintiff stopped at the intersection before he entered it. (Tr. at 136, 156.) Indeed, contrary to Plaintiff's testimony during the deposition, the parties stipulated that "prior to the incident, Mr. Scott was stopped at the white cross line, slash, stop bar in the middle lane of West Broad Street." (Tr. at 434.) Perhaps this significant inconsistency explains Plaintiff's decision not to testify. Or, perhaps, Plaintiff elected not to appear at all at trial, because his injuries had largely healed as the defense expert indicated (in contrast to Plaintiff's expert's testimony, who described lasting consequences to Plaintiff from the accident), which would have significantly reduced the amount of damages had Plaintiff prevailed on the issue of liability. Or, perhaps, Plaintiff did indeed have the lasting injuries that his expert described, but simply made a strategic

decision not to testify. We will never know, because the record does not speak to why Plaintiff elected not to testify. However, the record is clear that the Plaintiff — the person that brought this lawsuit — was available to testify and his testimony would have been material to the issues before the jury. Therefore, the missing witness instruction was appropriately given.

B. The Court did not err by failing to customize the jury instruction.

Plaintiff also argues that the Court failed to customize the jury instruction to apply only to Plaintiff. (Pl. Mem. at 2-3.) Specifically, Plaintiff contends that, as a result of the lack of a customized instruction, defense counsel improperly argued that Plaintiff's doctors failed to testify and that this argument confused the jury. (Pl. Mem. at 3.) This argument merits little discussion, as Plaintiff neither sought a customized jury instruction (Tr. at 481-81),[7] nor did Plaintiff object to defense counsel's argument on this point (Tr. at 511). Thus, Plaintiff has waived any challenge to the substance of the instruction and defense counsel's argument on this point. Fed. R. Civ. P. 51(c)(1); *Belk, Inc.*, 679 F.3d at 153 n. 6; *Mattison*, 947 F.2d at 112; *Dennis v. General Electric Corp.*, 762 F.2d 365, 367 (4th Cir. 1985); *VS Technologies, LLC, v. Twitter, Inc.*, 2012 WL 1481508, at *11 (E.D. Va. Apr. 27, 2012).

Moreover, the Court issued the instruction in accordance with the standard language found in the Virginia Model Jury Instructions. *See Thompson v. Direct Impact Company*, 63 F. Supp. 2d 721, 728 (E.D. Va. 1998) (jury charge that tracked "standard" language of the missing witness instruction proper). Furthermore, the instruction mirrored the exact language in Plaintiff's proposed jury instructions. (Joint Requested Jury Instructions at 3.)

Finally, the instruction did not lead to jury confusion. The testimony from the doctors

---

[7]     After the Court indicated during the jury charge conference that it intended to give the missing witness instruction, the only limitation that Plaintiff's counsel sought was to prohibit defense counsel from arguing the instruction as it related to Plaintiff's mother, which is not at issue here. (Tr. at 483-84.)

who did not testify went to the issue of Plaintiff's injuries and damages, not Defendants' liability. Because the jury found no negligence, the jury never reached the issue of damages that implicated Plaintiff's injuries. Consequently, defense counsel's closing arguments recalling the lack of doctor testimony could not have improperly confused the jury. Therefore, even if error did occur in the wording of the instruction, the instruction did not lead to an unjust result.

V.    Conclusion

For the foregoing reasons, the Court correctly gave the missing witness instruction and the instruction was properly worded. And even if any error did occur, it did not cause a miscarriage of justice, which Rule 59(a) demands to warrant a new trial. *See VS Technologies, LLC,* 2012 WL 1481508, at *11 (third prong of Rule 59(a) motion "requires a policy analysis under which the 'judge's unique vantage point and day-to-day experience with such matters lend expertise.'") (quoting *Fairshter v. American Nat'l Red Cross*, 322 F. Supp. 2d 646, 650 (E.D. Va. 2004)). Consequently, the Court DENIES Plaintiff's Rule 59 Motion for a New Trial (ECF No. 107).

Let the Clerk file this Opinion electronically and notify all counsel accordingly.

An appropriate Order shall be issued consistent with this Opinion.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: January 29, 2013

22